(No. 3917—)

ARZA MARTIN HORTON, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 19, 1946.*

J. EDWARD RADLEY, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

DAMRON, J.

This is a claim for injuries sustained by claimant on June 16, 1944 while employed by the respondent in its Division of Highways.

The record discloses that on the last mentioned date, claimant was trucking sand for the respondent, from a railroad car to a stock pile at the storage yard of respondent near Peoria, Illinois. Claimant was standing on the running board of a State truck with the cab door open, steering the truck backward. While he was thus backing the truck into a position to unload his cargo of sand, the truck sideswiped a snowplow that was stored in the storage yard. The collision forced the cab door partly closed, crushing claimant between the door and the cab body, sustaining contusion of his chest, and fractured his right hand.

From the report of the Division of Highways, filed in this case, and the statements, briefs, and arguments on behalf of the respondent and claimant, we find that the only question to be determined herein is the nature and extent of claimant's injuries.

The report of the Division of Highways discloses that claimant was immediately sent to St. Francis Hospital, Peoria, Illinois, where Dr. E. C. Burhans was given charge of the case. Claimant was hospitalized there and a cast was applied to his hand. On June 21, 1944, Dr. Burhans sent the following report to the Division of Highways:

"Patient's story of accident—Was backing a truck when it struck a snowplow, which caused the door of the truck to slam on right arm and hand. Nature of injury—Contusion of chest, fractured 4th and 5th metacarpal bones of right hand. Treatment—Reduction of fractures, application of cast. Estimated date of discharge—About 6 weeks. Estimated date patient able to work—About 6 weeks for full time. Partial duties, supervising, June 24. Permanent disability — Undetermined."

Mr. Horton returned to work on June 24, 1944. The fractures did not heal and he was admitted to the John C. Proctor Hospital on July 21, 1944. At that time, Dr. Burhans operated on the hand, fastening the metacarpal bone ends together with steel wire. Following the operation, the claimant again returned to work on July 31, 1944.

Dr. Burhans, on May 26, 1945, sent the following report to the Division of Highways:

"Nature of Injury—Contusion chest—fracture 4th and 5th metacorpal bones of right hand. Crushing injuries. Treatment—5th metacarpal didn't heal with first application of cast. Second time open reductions were done, and fixation of 5th metacarpal with steel wire. Cast applied. X-ray showed 5th metacarpal was not healed. July 21, 1944, second cast applied. Permanent disability—50% loss of flexion of 1st, 2nd, 3rd, and 4th fingers, right hand; 25% loss of extension of 3rd and 4th fingers. This is permanent. He will have about 50% loss of use of the entire hand. I believe this to be permanent."

Claimant was paid compensation for the periods, June 17 to 23, and July 21 to 30, 1944, inclusive, at the rate of $150.00 per month, totaling the sum of $83.39. In addition thereto, the respondent has paid the following creditors in connection with the claimant's injuries: Dr. Burhans, $124.00; St. Francis Hospital, $40.75; and John C. Proctor Hospital, $70.00.

The record further discloses that the claimant had been employed by the Division of Highways for more than one year prior to the accident and had earned $1792.50; that, at the time of the injury, he was 53 years

of age, married, but had no children under 16 years of age dependent upon him for support.

From the medical reports filed herein, we conclude that claimant has suffered a 50% permanent loss of use of his right hand.

After full consideration of the record, the Court finds that claimant and respondent were, on the 16th day of June 1944, operating under the provision of the Workmen's Compensation Act; that on the date last above mentioned, claimant sustained accidental injuries which did arise out of and in the course of the employment; that notice of said accident was given said respondent and claim for compensation on account thereof was made on said respondent within the time required under Section 24 of the Act. That the earnings of the claimant for the year next preceding the injury were $1792.50 and the average weekly wage was $34.47; that the claimant at the time of injury had no children under the age of 16 years; that all medical, hospital, and other expenses incurred by reason of said injury have been paid by the respondent.

We further find that claimant was entitled to receive temporary total compensation for a period of ten days at the rate of $17.63 per week, or a total sum of $25.19. However, the record discloses that claimant was paid by the respondent the sum of $83.39 for unproductive time, which is an overpayment of temporary total compensation of $58.20.

As claimant has suffered a 50% loss of use of his right hand, he is entitled to receive under Section 8, Paragraph (e), Sub-Paragraph (12) and also Sub-Paragraph (17) of the Workmen's Compensation Act, 50% of his average weekly wage for a period of 85 weeks. Claimant's compensation rate, as based on his annual earnings,

is $17.63 per week, inasmuch as he has no children under 16 years of age dependent upon him for support. Eighty-five times $17.63 is the sum of $1498.55, from which must be deducted the sum of $58.20, heretofore paid to claimant for unproductive time, leaving a balance due claimant of $1440.35.

An award is therefore entered in favor of claimant in the sum of fourteen hundred forty dollars and thirty-five cents ($1440.35), all of which has accrued and is payable in a lump sum.

This award is subject to the approval of the Governor, as provided in Section 3 of ''An Act concerning the payment of compensation awards to State employees.''